*602 OPINION OF THE COURT
Edward H. Lehner, J.
This is a CPLR article 78 proceeding commenced by the Washington Post Company to compel the production of certain documents in the possession of respondent New York State Insurance Department (the Department) pursuant to the New York Freedom of Information Law (FOIL; Public Officers Law, art 6).
A reporter for the Washington Post, Ronald Kessler, initiated this interesting dispute over access to minutes of meetings of the boards of directors and committees thereof for 1978, 1979 and 1980 of Metropolitan Life Insurance Company, Equitable Life Assurance Society of the United States and New York Life Insurance Company. The foregoing carriers have heretofore been granted leave to intervene herein and have, together with the petitioner, submitted excellent briefs on the issues confronting the court. The Department has opposed the application but submitted no memorandum, instead, relying on the authorities submitted by the intervenors.
Pursuant to sections 26-a and 29 of the Insurance Law, the insurers must maintain and provide the Department access to certain books and records including minutes of meetings of their boards of directors. Although only access is required by statute, since ■ 1927 the Department has required life insurance companies to furnish it with copies of the minutes of meetings of their boards of directors and “subordinate standing committees”. The Department represented that the minutes would be treated as confidential. After the advent of FOIL, further assurances of confidentiality were given. At first, the records access officer of the Department, by letter dated December 10, 1980, refused the request citing section 87 (subd 2, par [d]) of the Public Officers Law which denies access to records which “are trade secrets or are maintained for the regulation of commercial enterprise which if disclosed would cause substantial injury to the competitive position of the subject enterprise”.
Upon appeal by petitioner, the blanket denial was reversed by the general counsel to the Department by letter dated January 20, 1981, who indicated that the Depart *603 ment would exclude only those items exempt under section 87 (subd 2, par [d]) of the Public Officers Law and that the carriers would be given the opportunity to be heard ex parte, in support of any claim of nondisclosure.
Thereafter, by letter of an assistant general counsel, dated June 19, 1981, the Department again reversed its position and issued a blanket denial of access on the grounds that the minutes (i) are not “records” within the purview of the FOIL, (ii) were granted confidentiality and (iii) are exempt pursuant to subdivision 2 of section 87 of the Public Officers Law; and further because sections 26-a and 29 of the Insurance Law only permit stockholders and policyholders access to the minutes for a necessary and legitimate corporate purpose.
Petitioner sought to have the matter reviewed by the Committee on Public Access to Records (the Committee). The executive director of that body rendered an opinion that the blanket denial of access to all the records was not proper and not in keeping with the intent of the FOIL. However, -the Department thereafter reaffirmed its determination denying access to the records.
Initially, the court must note that great weight must be afforded a recommendation of the Committee, as the body designated by statute (Public Officers Law, § 89, subd 1, par [b]) to render adversary opinions to State agencies and others regarding the FOIL. (Matter of Miracle Mile Assoc. v Yudelson, 68 AD2d 176; Matter of Sheehan v City of Binghamton, 59 AD2d 808.)
Respondents’ argument that the Department is the final administrative arbiter of access flies in the face of legislative intent. The Legislature went to great lengths and in great detail in setting up a committee to advise agencies of their responsibilities under the statute. The intent was to provide State and municipal agencies, historically inclined against public disclosure of their records, with the advice and expertise of a body whose sole function is to interpret the FOIL. Here, the final blanket denial by the Department, which had previously given assurances of confidentiality, and which may have been somewhat embarrassed by the unenviable position it was in, must be treated with some suspect. *604 Respondents point in the case of Matter of John P. v Whalen (54 NY2d 89, 96) where it was held that in interpreting the Public Health Law, the opinion of the Committee was not entitled to any greater deference than the construction given by the Commissioner of Health and that such opinions “carry such weight as results from the strength of the reasoning and analysis they contain, but no more.” However, in that case the court was referring to a statute other than the FOIL. In interpreting the FOIL, which is necessary in order to ascertain if the minutes are “records” under subdivision 4 of section 86 of the Public Officers Law and if so, whether they are exempt under subdivision 2 of section 87 of the Public Officers Law, the aforesaid rule that the Committee’s opinion is entitled to great weight is applicable.
Generally, the FOIL is to be liberally interpreted and statutory exemptions from disclosure must be narrowly construed to allow maximum access. (Matter of Zuckerman v New York State Bd. of Parole, 53 AD2d 405; Matter of Fink v Lefkowitz, 47 NY2d 567, 571.)
Prior to January 1, 1978 (the effective date of L 1977, ch 933) the FOIL listed certain categories of documents that the public could obtain from government. With the adoption of said chapter the philosophy of the law changed so that all “records” (as defined in Public Officers Law, § 86, subd 4) of an “agency” (as defined in Public Officers Law, § 86, subd 3) are available to the public unless specifically exempted by section 87 of the Public Officers Law. In the event an agency denies access, section 89 (subd 4, par [b]) of the Public Officers Law provides that it has the burden of proving that an exemption applies. Commenting on the 1977 amendments the Court of Appeals in Matter of Westchester Rockland Newspapers v Kimball (50 NY2d 575, 580) said: “Thus, in contrast to earlier versions of the statute, the burden of demonstrating that the material requested is exempt now falls squarely on the shoulders of the one who asserts it * * * Put another way, in the absence of specific statutory protection for the requested material, the Freedom of Information Law compels disclosure, not concealment.”
*605 The respondents have made numerous arguments as to why the relief requested by petitioner should not be granted. The court will address those arguments of substance relevant herein.
Initially at issue is the question of whether the minutes in question are “records” subject to the FOIL. The statutory definition of that term is purposefully broad as it includes “any information kept, held, filed, produced or reproduced by, with or for an agency” (Public Officers Law, § 86, subd 4). Documents submitted by an insurance carrier to the Department, for use in its regulatory duties will, if not otherwise exempt, be subject to access. (See Matter of Belth v Insurance Dept. of State of N. Y., 95 Misc 2d 18.)
The type of documents in question have been furnished to the Department for over 50 years. Access by the Department is provided for in statute. Obviously, material gleaned therefrom and appearing in Department reports is public information. It is therefore somewhat incongruous to argue that the documents are totally and completely exempt.
In its supplemental brief Metropolitan argues that “no governmental decisions or determination is based on Metropolitan’s minutes”. Why then does the Department, which is charged with the duty to regulate the insurance industry, require submission of copies? One reason is clear. There may be activities revealed in the minutes which would require intervention by the regulatory agency. For example, if the minutes showed that an illegal or unlawful act was being undertaken or contemplated, the Department would certainly have the obligation to take steps to prevent the happening of same. The failure to prevent such occurrence would be a governmental decision with respect to which the public should under the FOIL be entitled to information. The preamble to the statute (Public Officers Law, § 84) provides that the “people’s right to know the process of governmental decision-making and to review the documents and statistics leading to determinations is basic to our society”. It should be made clear that petitioner is not making any claim of an illegal or unlawful act and in fact supplies no reason for requesting the minutes, but the illustration is offered merely to show why the minutes may *606 be considered “records” under subdivision 4 of section 86 of the Public Officers Law.
Thus, combining the broad definition of “record” with the requirement for liberal construction mandates a finding that the minutes are “records” subject to the FOIL.
The carrier’s claim that a document is not a “record”, unless it is subject to free disposition by the Department is in the nature of a “Catch 22” argument. While it is true that minutes in the possession of the Department are not to be freely published by it, when a formal FOIL request is filed, it is then the duty of the Department to examine the documents in its possession and make a determination as to whether any of the material therein may be withheld as being exempt. (By a 1981 amendment, eff Jan. 1, 1982 [after the institution of this suit], a formal procedure was established to enable a person submitting information to a State agency to request, at the time of submission, that the agency exempt such information from disclosure [Public Officers Law, § 89, subd 5].)
Finally on this point, the court agrees with respondents that the provision of section 89 (subd 4, par [b]) of the Public Officers Law, that an agency has the burden of proving that an exemption applies does not relate to a definition of what is a “record”. Thus, the court in determining such issue has not made its decision through an application of said section.
Next the court will consider the insurers’ claim that the promise of confidentiality by the Department prevents disclosure. Nowhere in the statutory scheme are provisions made for agencies to grant confidentiality nor are persons whose records are subject to disclosure, provided with the mechanism to reserve confidentiality (except that as indicated above, eff Jan. 1, 1982, a person may obtain a prior determination of whether an exemption applies). The reasons therefore are obvious. Statutory guidelines control, and if agencies could declare documents confidential, the statute would be a worthless exercise in Orwellian doublespeak. Any document submitted to an agency is, as stated in section 87 of the Public Officers Law, subject to disclosure unless specifically made exempt. The minutes *607 sought herein all relate to submissions by the insurers after the drastic 1977 amendments to the FOIL referred to above.
Respondents raise the novel argument that the documents in question are protected by the Federal Copyright Act (US Code, tit 17). Such a construction has never been afforded by that statute, which to the contrary has been narrowly applied with concern to public access to information. (See Rosemont Enterprises v Random House, 366 F2d 303.) Additionally, it is quite apparent that access should be provided petitioner pursuant to the fair use doctrine. (See US Code, tit 17, § 107.)
Upon considering all of respondents’ arguments, the court finds that no total exemption applies. Since the Department has not specifically addressed potential exemptions to portions of the minutes pursuant to subdivision 2 of section 87 of the Public Officers Law, it thus has not sustained the burden prescribed in section 89 (subd 4, par [b]) of the Public Officers Law. It is conceivable and perhaps highly likely that portions of the minutes sought could be subject to the exemptions provided in section 87 (subd 2, pars [b], [c], or [d]) of the Public Officers Law in that disclosure would (i) constitute “an unwarranted invasion of personal privacy”, (ii) impair “contract awards or collective bargaining negotiations” or (iii) reveal “trade secrets” causing “substantial injury to the competitive position of the subject enterprise”.
In dealing with the procedure to be adopted when an agency fails to provide specifics, the court in Matter of Miracle Mile Assoc. v Yudelson (86 AD2d 176, 180, supra) said: “The thrust of the case law is clear. Since, as noted, extensive in camera review is burdensome, both the New York and Federal courts afford a full opportunity to the agency involved to avoid a court inspection by otherwise meeting its burden of proving an exemption. The agency must furnish a sufficiently detailed analysis of the questioned documents so that Special Term has an adequate basis for the exercise of its discretion and to insure that in camera inspection will be directed only in the ‘rare case’. However, since the parties obviously have unequal knowledge of the documents sought, where the agency fails to *608 give sufficiently detailed information with respect to the material allegedly exempt to permit the trial court to decide the issue, in camera inspection is one vehicle for protecting the rights of both.” (See, also, Matter of Westchester Rockland Newspapers v Kimball, 50 NY2d 575, supra; Matter of Westchester Rockland Newspapers v Mosczydlowski, 58 AD2d 234; Matter of Fink v Lefkowitz, 47 NY2d 567, supra; Jordan v Hammock, 109 Misc 2d 1052.)
Therefore the court cannot rule that access be furnished immediately to all documents. Instead it will direct in the judgment to be settled herein that the Department sift through the minutes in question and within 30 days of the service of such judgment with notice of entry, advise each of the intervenors of the portions of its minutes which are found exempt and which are subject to disclosure. The insurers will then have 30 days after receipt of such information to inform the court of the portions of the minutes to which it claims an exemption from disclosure. Material for which there is no claimed exemption shall be furnished by the Department to the petitioner within 20 days thereafter upon payment of any applicable fees. Material for which an exemption is claimed shall be subject to an in camera inspection.
The court recognizes that in directing the disclosure of the minutes of these mutual insurance companies, it is directing the public dissemination of discussions heretofore not obtainable except by policyholders for a good corporate purpose. However, the insurers were providing the minutes to the Department prior to the adoption of the FOIL and continued to do so after its adoption. Directors participating at the meetings should have been aware that the new era of public disclosure and accountability might make their deliberations on nonexempt matters subject to disclosure. The companies involved herein are regulated insurers operated for the benefit of their policyholders. With the Open Meetings Law (Public Officers Law, art 7), boards of public bodies must now conduct their deliberations in the glare of a public spotlight. No such rules govern the operation of regulated industries operating in a competitive market.. All that is decided today is that, if an insurer provides its regulator with a copy of its minutes *609 (whether voluntarily or under compulsion), such minutes are not subject to a blanket exemption from disclosure. In balancing the public’s right to know about information supplied to government and business’ right to keep information confidential, the Legislature in enacting the FOIL set forth guidelines in section 87 of the Public Officers Law. Said rules shall be followed during the in camera examination.